Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## UNITED STATES DISTRICT COURT

### For the

### District of

### Division

> Case: 1:26-cv-00581   JURY DEMAND
> Assigned To : Nichols, Carl J.
> Assign. Date : 2/23/2026
> Description: Pro Se Gen. Civ. (F-DECK)

Robert Charles Kerr (father)
Emily Grace Kerr (daughter)
Plaintiffs

-v-                               Jury Trial (check one)      Yes: X            No

United States Department of State
Defendant

### (COMPLAINT FOR A CIVIL CASE)

1.    The Parties to This Complaint

A.    The Plaintiffs

|  |  |
|---|---|
| Name: | Robert Kerr (father) and Emily Kerr (daughter) |
| Street Address: | 12 Quaker Bridge Road |
| City and Country: | Croton-on-Hudson, Westchester Country |
| State and Zip Code: | New York, 10520 |
| Telephone Number: | (+45) 9153 1969 (Danish phone number) |
| E-mail Address: | Robchak@hotmail.com |

B.    The Defendants

|  |  |
|---|---|
| Name: | U.S. Department of State |
| Street Address: | 2201 C Street, NW |
| City and Country | Washington |
| State and Zip Code: | DC, 20521 |
| Telephone: | (202) 647-4000 |

**RECEIVED**

FEB 23 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

II    Basis Jurisdiction

What is the basis for federal court jurisdiction?  (Check all that apply)

Federal question        X                Diversity of citizenship

A.    If the Basis for Jurisdiction is a Federal Question List the specific federal statues, federal treaties and/or provisions of the United States Constitution that are at issue in this case.

**Equal protection clause of the 14th amendment of the U.S. Constitution.  The United States Embassy in Copenhagen in coordination with the State Department headquarters in Washington, DC  have actively, continuously and currently denied Emily Grace Kerr basic American citizen services specifically because the crimes committed against her were by a member of the American embassy team.**

B.    If the Basis of the jurisdiction is diversity of citizenship

**Not applicaple**

III    Statement of Claim

Synopsis: On February 23, 2024 at approximately 5:00 pm a U.S. Embassy plated vehicle struck and nearly killed Emily Grace Kerr, a U.S. citizen child, in downtown Copenhagen, Denmark. The Copenhagen police performed a thorough investigation and concluded that the embassy driver was criminally negligent for multiple reasons and recommended criminal prosecution as justice for Emily.  However, the U.S. Embassy in Denmark, in direct coordination with the State Department headquarters in Washington, DC conspired and continued to conspire to deny Emily justice despite the Embassy's and State Department's published mission statements that their number one mission goal is the safety and welfare of American citizens in Denmark and overseas and that one of the services American citizens are entitled to everywhere in the world is embassy advocacy for equal justice on behalf of American citizen victims of crime overseas. Well, Emily is an American citizen child.  What about equal justice for her?  The Embassy's and Department's continued failure to provide any degree of American Citizen Services for Emily, apparently because the perpetrator of the crimes committed against her was an embassy Marine, is a direct violation of her 14th Amendment Equal Protection rights.

Detailed Statement: What took place on February 23, 2024 was more than a garden variety traffic accident.  The Danish police determined that the negligence of the embassy driver rose to the level of criminal prosecution.

The incident that took February 23 was much more than an "accident." Multiple direct eye witnesses testified that the embassy driver, an on duty U.S. Marine: 1) ran a completely red light; 2) was completely unaware of his surroundings, not even applying the breaks until 100 yards after the vehicle had completely passed over Emily's body; and 3) the driver was observed to be watching a cell phone video as he passed through the intersection. Though the embassy regional security officer actively interfered in the Danish police investigation by refusing to provide vehicular access to the Danish investigators, the investigators were able to determine that the driver was not properly licensed to operate the particular category of vehicle he was driving and that a cell phone video was playing while he was driving, an observation that was also testified to by eye witnesses. A military accountability review board accepted all of the conclusions of the Danish police investigation, including that the light had changed completely red prior to the embassy vehicle entering the intersection and that it was completely green for Emily.

The Danish police concluded, and the U.S. military accountability board agreed, that Emily had an absolute right to expect safe passage through that intersection and that the embassy driver was 100% negligent for any damages done to her for the crimes that he committed against her. The Copenhagen police, after a thorough investigation, concluded that these crimes were worthy of criminal prosecution and referred the case to the Copenhagen city (kommune) attorney's office for prosecution with the following sentencing recommendations: 1) 1 year jail sentence for the driver; 2) license termination; 3) confiscation of vehicle. Such was the level of negligence of the driver that the recommended penalties were so severe. This was not a mere "accident." This was determined to be criminal negligence. However, rather than advocate for fair legal treatment and justice for Emily, an American citizen child, which is the number one mandate and mission statement of the U.S. Embassy in Denmark and the number one mandate and mission statement of the U.S State Department and Office of Consular Affairs worldwide, the embassy in Denmark under the direct supervision of the State Department headquarters in Washington, DC actively interfered with the police investigation by: 1) preventing the Danish police from inspecting the inside of the vehicle; 2) refusing to allow the police to seize and inspect the cell phone that was seen by the Danish police to be playing a video minutes after Emily was run over; 3) refusing to turn over to the Danish police the vehicle's video cameras which are a standard feature in all embassy vehicle (particularly up armored vehicles which may be used to transport ambassadors and other VIPs) 4) claiming "diplomatic immunity" on the driver's behalf; and 5) allowing the driver to depart Denmark in the immediate aftermath of running over Emily, thus avoiding prosecution and justice for Emily.

The above actions actively denied Emily, a U.S. citizen child, justice for the crimes committed against her. In so doing, the U.S. Embassy violated its core mission in Denmark – protecting U.S. citizens abroad. The Embassy directly violated Emily's civil right of equal protection under the 14th amendment of the U.S. Constitution. On several occasions since the incident, Emily's father, Robert Kerr, also an American citizen, on Emily's behalf, has petitioned the embassy for

support to advocate for justice for Emily in the Danish legal system, as is listed as the right of U.S. citizens in Denmark who are victims of crime. The embassy's website lists this as a basic service provided to American citizens resident in Denmark, and the State Department office of Consular Affairs lists this as a basic service provided to all American citizens worldwide – to advocate for equal justice for Americans who are victims of crimes overseas and to query local courts overseas on the status of prosecutions of perpetrators of crimes against American citizens. However, on each occasion the embassy has refused to provide this basic service, and embassy officials on various occasions have relayed that 1) fulfilling this basic service would be a "conflict of interest for the embassy;" 2) that all of the pleas for embassy assistance and support for Emily and the crimes committed against her, have been referred to "Washington" for "guidance," and 3) more recently these consular requests for this basic service have simply been ignored despite the embassy's posted pledge to respond to all legitimate American Citizen Services requests within two business days. Well, is there a more legitimate or urgent type of request for American Citizen Services anywhere in the world than crimes committed against an American child?

The State Department in Washington has also failed to complete a Freedom of Information Act (FOIA) request for all unclassified correspondence about the incident involving Emily, even though it had accepted the request in August, 2024 and assigned a targeted completion date of summer, 2025. Emily Kerr and/or Emily Grace Kerr is a unique name in Denmark, as is Robert Kerr and/or Robert Charles Kerr. A search of all unclassified email and cable correspondence between the embassy in Denmark and the State Department in Washington during the window of February 22, 2024 to the present date should be easy. It can thus be responsibly assumed that she is the only U.S. citizen in Denmark with this name. Also, to note, a similar FOIA request was made of the Department of Defense, which responded within the promised response time.

The embassy's and State Department's actions ostensibly under the guise of "diplomatic immunity," or for other reasons, have actively denied Emily her 14th Amendment right of equal protection. They have correspondingly violated her and her family's right of equal protection by causing great financial hardship and distress as the family subsequently incurred huge financial expenses in order to relocate to handicapped accessible housing for Emily, so that she could attend school, and a dramatic loss of income due to the need to provide full time parenting both for Emily to be able to attend school and to attend physical therapy throughout her recovery period. The totality of these losses is not yet determined, given that Emily continues to need additional and future operations and physical therapy in order to stretch bones in her legs that have otherwise stopped growing.

The damages resulting from the crimes committed against Emily by the embassy on that date were real and consequential. Emily suffered multiple skull fractures and a concussion, although luckily none of these were serious. However, she also experienced broken bones in one hand

and both legs. In particular, the complete break in her left femur was, and continues to be, very serious in that her left leg stopped growing and is now several inches shorter than her right leg. Emily was hospitalized for several weeks, wheelchair bound for several months and dependent on crutches for several additional months. During these windows, Emily was unable to climb stairs and special handicapped accessible accommodation had to be obtained so that Emily could attend school. Emily needed specialized physical therapy classes for months in order to be able to walk and climb stairs properly. She also required several corrective operations to her injured hand and to both legs, and several operations with long and painful recovery periods are still needed. Most notably, the break in her femur caused her left leg to stop growing, and at the point that orthopedists determine that her right leg is fully grown, specialized operations will be undertaken and devices attached to her leg to literally stretch it over a period of many months. Not only will Emily be in pain and discomfort throughout that period, but she will also need additional physical therapy for many months, and there is a high likelihood that she will suffer a degree of permanent, lifetime disability. The pain and suffering that Emily has endured over the past two years, which will continue for several additional years, is significant. Moreover, the financial hardship that the embassy driver's negligence caused the family is also significant. Emily's father had to quit his job in Benin, Africa and immediately return to Denmark to provide childcare for Emily, and the family had to relocate to a series of handicapped accessible apartments so that Emily could attend school and return to a sense of normalcy in her life, the consequences of which have caused great financial hardship to the family.

The purpose of this lawsuit is to allow for Emily and her family to be made whole, a common legal principle when absolute liability applies. The embassy and the State Department have actively prevented Emily from receiving justice in Denmark. Moreover, the embassy did not have adequate insurance to cover all of the real costs directly associated with the embassy driver's negligence. Therefore, the goal of this lawsuit is to provide a channel whereby the State Department will accept responsibility to make Emily and her family whole in Washington, DC home of the State Department. To note, Emily and Robert Kerr have also filed OF95 forms with both the Department of State and the Department of Defense in order to secure compensation for Emily's physical injuries. The Department of Defense was judged to be the logical primary filing venue, however forms were filed in both venues given the lack of clarity for ultimate responsibility. The embassy driver was an active duty US Embassy Marine with reporting obligations to both federal departments (State and Defense). Moreover, it was the embassy regional security officer and embassy leadership in conjunction with State Department headquarters guidance that actively interfered in the incident's investigation and subsequent denial of Emily's basic American Citizen Services rights. Hence our filing the OF95 forms with both departments.

The family also asks the court to compel the State Department to fulfill its legally required Freedom of Information request responsibilities in case it can be determined that additional

violations of State Department policy were committed in dealing with this incident involving an embassy vehicle, embassy drivers and an American citizen child. Neither the State Department, nor the embassy can claim any legal justification for withholding unclassified communications, either emails, cables or meeting notes. Yet, the State Department is more than 1 year negligent in providing them.

It would make no legal or logical sense for the State Department to claim that it has a constitutional obligation to deny Emily or her family their basic equal protection rights based on their own direct liability for the crime committed against Emily. It can make no similar claim to deny responsibility for the attendant financial stress that was rendered to Emily's family because of the driver's negligence. The purpose of the United States signing the Vienna Convention was not so that it could violate the rights of its own citizens abroad, especially the rights of American children. Yet, essentially the embassy and State Department have coordinated to deny Emily and her family the ability to be made whole in Denmark. The court can well imagine the activity and advocacy that the embassy and State Department would have engaged in or would still be engaged in if the driver that ran over Emily had been a driver or ambassador from a hostile country, such as Iran. Clearly the U.S. ambassador to Denmark and indeed the secretary of State or even the president would be advocating for the Denmark courts to act to secure legal justice for Emily and her family and to make the family whole for its losses. Under the Equal Protection principle, Emily and her family are entitled to the exact same level of advocacy for justice and financial compensation as these parties would demand for Emily and family under the prior scenario. Therefore, since the embassy and State Department have actively conspired and collaborated to deny justice for Emily and her family in Denmark, the purpose of this lawsuit is to compel the embassy and State Department to make Emily and her family whole in the United States.

IV Relief

Emily seeks the full level of compensation needed to make her whole for multiple fractures on multiple areas of her body, including a complete break of her left femur, estimated to be $500,000; Robert seeks the replacement of his lost income for the duration needed to provide child care at the rate that he was earning at the time Emily was struck by the embassy vehicle due to the reality that he had to quit his job and return to Denmark. Both Emily and Robert claim per diem and a housing allowance for all times needed for Emily's recovery in wheelchair accessible locations at the same rate and under the same formulas that the State Department would provide its own employees in similar childcare situations. Emily Kerr and Robert Kerr also seek to recover all attorney's fees and all other financial compensation deemed appropriate in similar situations of negligence. And any punitive damages that a jury may award. Emily and Robert Kerr have always been open to and expressed a prior desire for a mediated settlement

consistent with the above goals and compensation standards in Washington, DC, home of the State Department or New York State, Emily's and Roberts permanent home.

Robert also seeks the immediate release of the long overdue Freedom of Information Request.

V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.    For Parties Without and Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file wit the Clerk's Office may result in the dismissal of my case.

Date of signing:   2/26/2026

Signature of Plaintiff:   Robert Kerr (for self and in loco parentis for Emily Grace Kerr)

Printed Name of Plaintiff:   Emily Grace Kerr
Robert Charles Kerr

 **Outlook**

---

### John - Fw: [External] Re: Situation of Emily Kerr

**From** Robert Kerr <robchak@hotmail.com>
**Date** Sun 2/22/2026 2:07 PM
**To**    John Kincannon <johnkincannon@hotmail.com>

At least the first page of this email trail is relevant. If you had a highlighter to highlight the line whereby Erin acknowledges that she forwards every email to Washington for guidance.

Thanks

---

**From:** Hamrick, Erin P (Copenhagen) <HamrickEP@state.gov>
**Sent:** Tuesday, June 17, 2025 11:51 AM
**To:** Robert Kerr <robchak@hotmail.com>
**Cc:** Mastin, Paul E (Copenhagen) <MastinPE@state.gov>
**Subject:** RE: [External] Re: Situation of Emily Kerr

Dear Mr. Kerr,

Thank you for your messages. We have diligently read your emails and shared them with the relevant offices at the Department of State. We are seeking approval to meet with you and will reach out once that approval has been received.

Kind Regards,
Erin

Erin Hamrick | Management Counselor | U.S. Mission Denmark
Dag Hammarskjölds Allé 24, 2100 København, Denmark
O:+45 3341 7499 | M:+45 2061 5847 | hamrickep@state.gov

---

**From:** Robert Kerr <robchak@hotmail.com>
**Sent:** Thursday, June 12, 2025 1:41 PM
**To:** Mastin, Paul E (Copenhagen) <MastinPE@state.gov>; Hamrick, Erin P (Copenhagen) <HamrickEP@state.gov>
**Subject:** [External] Re: Situation of Emily Kerr

just to let you know that Emily is faced with another 18 months of operations, crutches and wheelchair recovery in order to reverse stunting of the growth of her left leg. The top photograph illustrates what her leg will look like for three months so that it can be stretched to compensate for the inability to grow naturally. Each evening her mother or I will have to tighten screws in order to stretch her leg bone. Otherwise, the result will be that leg being 1 full inch shorter than the other leg. Needless to say, when she learned this news, she was distraught. Her reaction: "You mean I have to go through this all over again?" And in fact, this time it will be worse.

All because of the absolute negligence of a US embassy driver who was driving a vehicle he was not licensed to drive, passed through a 100% red light while a video was playing on his

**Copenhagen Police**
BSE Emergency squad 15
Borups Allé 266
2400  Copenhagen Nv
Tel.: 33141448

# Questioning report
# Witness

*Date:*            Friday, 23 February 2024

**Witness 2**

███████████

*File no.:*            0100-80111-00023-24
*Count no.:*
*Appendix no.:*            9

---

*Questioning of*

██████████████

█████████     ████

████████████████

*Place of birth*

████████████

*Nationality*

██

*Questioning started*
Friday, 23 February 2024, 16:58

*Questioning ended*
Friday, 23 February 2024, 17:17

---

*Nature of the case*
Traffic accident, minor property damage
w/personal injury

*Scene of accident:*
Intersection Ryesgade/
Østerbrogade
Ryesgade
DK-2100 Copenhagen Ø

*Time (period) of accident:*
Friday, 23 February 2024, 16:00

*Municipality*
Copenhagen

---

*Formalities*
Questioning form: By telephone
The Witness was informed of the reason.
The Witness did not wish to read his statement.

---

*Results of the questioning:*

The Witness stated that he was walking with his wife along Østerbrogade towards the lakes. The Witness and his wife stopped at the pedestrian crossing next to YOBURGER at the  Østerbrogade/Ryesgade intersection.

## Questioning report
## Witness

*Date:*    Friday, 23 February 2024

**Witness 2**

*File no.:*    0100-80111-00023-24

---

The Witness noticed a little girl in front of him in the pedestrian crossing at the traffic island between the two roadways. When the light turned green, the Witness and his wife started to cross the road, and he saw the girl walk out onto the pedestrian crossing.

The Witness said that a car came driving from Trianglen along Østerbrogade towards the lakes. The driving was "completely insane". The car continued into the intersection, across the pedestrian crossing at unchanged speed, and hit a little girl, who disappeared under the car.

The Witness said that the car did not stop when it hit the girl, but continued along Østerbrogade.

The Witness said that he immediately started running after the car, which stopped about 100 metres from the pedestrian crossing further down Østerbrogade.

The Witness said that there were enough people taking care of the girl, so he went out into the intersection to direct the traffic.

The Witness added that when the ambulance arrived, he left with his wife.

When asked about the speed of the vehicle when it hit the girl, the Witness replied that the car was driving at a minimum of 40 km/h but not faster than 50 km/h.

When asked where the girl was standing when the accident occurred, the Witness replied that the girl was standing at the traffic island and had stepped out onto the pedestrian crossing.

When asked whether the Witness saw the colour of the light signal when the girl stepped out onto the pedestrian crossing, the Witness replied that he could say with 100 percent certainty that the light signal had changed to green when the girl stepped out onto the pedestrian crossing. The Witness added that the light signal changed from red to green before the girl stepped out onto the pedestrian crossing.

# Questioning report
# Witness

*Date:*           Friday, 23 February 2024

**Witness 2**

*File no.:*        0100-80111-00023-24

---

When asked why he found the driving insane, the Witness replied that "it seemed like the driver of the car was looking at his phone, because he did not slow down at all when he ran over the girl". The Witness said that he could not understand why the driver of the car did not brake when he hit the girl. The Witness added that the brake lights of the car were not activated until about 50 to 70 metres further down Østerbrogade.

When asked what part of the car hit the girl, the Witness answered that the girl was hit by the left front of the car.

---

*Questioning ended*
Friday, 23 February 2024 at 17:17

_____
Signature by the person questioned


_____
Case officer's signature

The nature of Emily's injuries required special attention when lifting her wheelchair up and downstairs. Hence the need to relocate to accommodations that were wheelchair accessible.







Inbox - John Kirjannon - Outlook



Inbox - John Kingannon - Outlook



This photo documents a procedure Emily will need in 7-8 months. For three months, the screws on the brace will need to be tightened. She will need to wear the brace 24/7 which will include moments of intense pain.



The exact location where Emily was struck is to the right of the second green light. It is Inconceivable that a driver with his eyes on the road could pass through the entire Intersection and not see a child pedestrian.





Current photo of Emily walking stairs.



Emily Returns to School